NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: July 22, 2025

S25Y0775.  IN THE MATTER OF CHARLES M. DALZIEL, JR.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Adam M. Hames, who recommends that Charles M. Dalziel, Jr. — State Bar No. 203730, admitted 1980 — be suspended for at least one year for violating

Rules 1.6 (a),[1] 1.15 (I) (c),[2] and 1.16 (d)[3] of the Georgia Rules of

Professional Conduct ("GRPC") and that he not be reinstated until

a licensed psychologist or psychiatrist certifies that he is mentally

competent to practice law. The special master concluded that Dalziel

violated Rule 1.15 (I) (c) by failing to promptly account for a client's

retainer; violated Rules 1.15 (I) (c) and 1.16 (d) by failing to refund

an "unearned" portion of the retainer, thereby converting it to his

personal use; and violated Rule 1.6 (a) by improperly disclosing

---

[1] Rule 1.6 (a) provides:

A lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, or are required by these rules or other law, or by order of the court.

Disbarment is the maximum penalty for violating this rule.

[2] Rule 1.15 (I) (c) provides, in relevant part, "a lawyer shall promptly deliver to the client . . . any funds . . . that the client . . . is entitled to receive and, upon request by the client . . . , shall promptly render a full accounting regarding such property." Disbarment is the maximum penalty for violating this rule.

[3] Rule 1.16 (d) provides, in relevant part, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee that has not been earned." A public reprimand is the maximum penalty for violating this rule.

2

confidential information about the client in response to a Bar grievance filed by the client. Having carefully reviewed the record, we agree that Dalziel violated Rule 1.15 (I) (c)'s accounting provision, and we conclude that the proper sanction is a six-month suspension with Dalziel's reinstatement conditioned on certification that he is fit to practice law.

### 1. Procedural History

In March 2023, the Bar filed a formal complaint charging Dalziel with violating Rules 1.6 (a), 1.15 (I) (c), and 1.16 (d).[4] Dalziel filed an answer in which he admitted some of the Bar's factual allegations but denied the rule violations. The Bar deposed him in November 2023. The special master held a disciplinary hearing in

---

[4] The Bar's complaint also charged Dalziel with violating Rule 1.16 (a), which states that a lawyer "shall withdraw from the representation of a client if: (1) the representation will result in the violation of the [GRPC] or other law; (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or (3) the lawyer is discharged." The complaint did not specify which subsection Dalziel violated, but the special master assumed the Bar was referring to subsection (3), and the special master concluded that the evidence for this allegation was insufficient. The Bar has not challenged this conclusion.

December 2024, at which the only witness was Dalziel's client, "W.G." Dalziel did not attend the hearing or notify the Bar or the special master that he would not be there. The special master filed his report and recommendation in January 2025. Neither Dalziel nor the Bar filed exceptions to the special master's report, and they did not seek review by the State Disciplinary Review Board.

*2. Relevant Facts*

In October 2020, W.G., a financial advisor, got a demand letter from a law firm representing one of his clients for losses the client claimed to have sustained through W.G.'s investments. W.G. hired Dalziel, an experienced securities lawyer, to represent him. W.G. paid Dalziel a retainer of $3,650, which covered 10 hours at Dalziel's rate. In early November 2020, Dalziel sent a written response to the claimant's lawyer. Later that month, while the demand matter was still open, W.G. requested and received Dalziel's assistance with an issue related to one of the claimant's pending investments. The demand matter was still open on January 25, 2021, when W.G.

4

asked for and got Dalziel's advice on the possibility of compromising with the claimant.

Ultimately, the claimant filed no suit against W.G. On February 20, 2021, Dalziel called W.G. to let him know that Dalziel was closing W.G.'s file. W.G. once again asked for an accounting of the retainer — he had already asked for an accounting several times in the preceding months, but Dalziel had not given him one. Dalziel said he would get back to him, but W.G. did not hear from Dalziel until four months later, when Dalziel sent him the bill for his services. The bill, which the Bar submitted into evidence at the disciplinary hearing, indicated that Dalziel spent a total of 17.4 hours on several tasks. Dalziel spent at least 10 hours on the demand matter — including 9.6 hours through when the demand response was sent and at least 0.4 hours advising W.G. on the claimant's pending investment and whether to compromise with the claimant. The invoice indicated that Dalziel applied the $3,650 retainer to the balance, and W.G. owed an additional $2,701. When W.G. did not pay the bill, Dalziel left voice messages in which he

5

threatened to get an arrest warrant for theft of services and warning that "heads" would "roll" if Dalziel did not get paid. W.G. also received an email from Dalziel in which Dalziel described himself as "dying," "desperate," and "totally besieged financially." In the end, W.G. paid Dalziel no additional money, and Dalziel did not refund any portion of the retainer to W.G.

W.G. filed a Bar grievance against Dalziel. In Dalziel's multiple responses to the Bar, he claimed that W.G. had filed the grievance to avoid paying the bill. Dalziel also called W.G. a "deadbeat" (and other names); alleged that W.G. was hiding assets from creditors; and disclosed information related to W.G.'s prior bankruptcy — in which Dalziel did not represent W.G. In Dalziel's deposition testimony, he said he learned of the bankruptcy from public records after W.G. filed the grievance. At the disciplinary hearing, W.G. did not testify to whether he told Dalziel about the bankruptcy or the alleged asset hiding. W.G. said he had worked with many alcoholics and Dalziel's conduct appeared to be due to alcohol abuse, and W.G. no longer trusted lawyers because of Dalziel. Dalziel was evaluated

by a psychologist, whose report was put into evidence. Based on the report, the special master found that Dalziel had a long history of alcohol abuse and significant mental-health issues, both of which were present when Dalziel represented W.G.

In its formal complaint, the Bar alleged that Dalziel violated Rule 1.15 (I) (c) and 1.16 (d) by failing to account for W.G.'s retainer despite numerous requests; Rules 1.15 (I) (c) and 1.16 (d) by failing to return the "unearned" portion of the retainer;[5] and Rule 1.6 (a) by disclosing confidential client information in his grievance-response disclosures.

*3. Special Master's Conclusions of Law*

The special master concluded that Dalziel violated Rule 1.15 (I) (c) by failing to provide the accounting despite W.G.'s requests. The special master also concluded that Dalziel violated

---

[5] We note that the wrongful retention of unearned fees is typically charged not as a violation of Rule 1.15 (I) (c), for which disbarment is authorized, but as a violation of Rule 1.16 (d), for which the maximum penalty is a public reprimand. See *In the Matter of Cleveland*, 317 Ga. 515, 516 n.10 (893 SE2d 692) (2023).

Rules 1.15 (I) (c) and 1.16 (d) by failing to return the "unearned" portion of the retainer and that, by failing to return it, Dalziel converted it to his personal use. In this regard, the special master acknowledged that it was "not crystal clear" that Dalziel owed W.G. a refund. As noted above, Dalziel's bill indicated that he worked at least ten hours on the demand matter — which would have consumed the retainer — from October 2020 through January 25, 2021, when it was undisputed that Dalziel performed work for W.G. Despite this evidence, the special master concluded that Dalziel "billed for more time than the client's requested scope of work." Finally, the special master concluded that Dalziel's grievance response violated Rule 1.6 (a). In this regard, the special master determined that the bankruptcy information and purported asset hiding gave Dalziel no defense to the grievance. See Rule 1.6 (b) (1) (iii) (lawyer may reveal information gained in professional relationship with client if lawyer reasonably believes disclosing it is necessary to respond to allegations concerning lawyer's representation of client). However, the special master did not

address whether or to what extent Dalziel gained that information in the course of his professional relationship with W.G.

Following this Court's precedent, the special master relied on the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") to determine the appropriate discipline. See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996). In relevant part, the special master determined that Dalziel intentionally violated duties owed to his client, which falls under ABA Standard 4.0. The special master noted that suspension is generally appropriate when a lawyer knows or should know that he is not properly dealing with a client's property, knowingly and improperly reveals information related to the representation of a client, or engages in a pattern of neglect and the lawyer's acts or omissions actually or potentially injure the client. See ABA Standards 4.12, 4.22, 4.42 (b). Regarding injury to W.G., the special master concluded that, while the financial harm from the fee issue was not significant and any damage from the disclosures was hard to measure, the potential injury from Dalziel's unprofessional conduct

could have been great, the disclosures were "embarrassing," and W.G. "expressed his distrust of all lawyers as a result of Dalziel's actions."

Turning to aggravation and mitigation, the special master determined that Dalziel acted with a dishonest or selfish motive, see ABA Standard 9.22 (b); there were multiple offenses in the matter, see ABA Standard 9.22 (d); and Dalziel showed no understanding of the wrongful nature of his conduct, see ABA Standard 9.22 (g). Also aggravating were Dalziel's substantial experience as an attorney, see ABA Standard 9.22 (i), and Dalziel's threatening voice messages.[6] In mitigation, the special master noted that there was no evidence Dalziel had any prior disciplinary history, see ABA Standard 9.32 (a), and that Dalziel was experiencing personal and emotional problems, see ABA Standard 9.32 (c). The special master concluded that Dalziel's alcohol abuse and mental-health issues

---

[6] The special master noted that the voice messages did not "fit neatly" into the ABA's aggravating-factor categories, but, as the special master recognized, the ABA's standards are generally instructive but are not controlling. Cf. *In the Matter of Tuggle*, 317 Ga. 255, 271 (6) (892 SE2d 761) (2023).

were not mitigating under ABA Standard 9.32 (i) because there had been no meaningful, sustained period of rehabilitation.

Although the Bar sought a suspension of at least six months, the special master, relying on cases in which attorneys improperly converted client funds, recommended that Dalziel be suspended at least one year. See, e.g., *In the Matter of Veach,* 310 Ga. 470 (851 SE2d 590) (2020).

*4. Analysis*

This Court generally defers to a special master's factual findings and credibility determinations unless they are clearly erroneous, but we review de novo the special master's conclusions of law as to what rules were violated and what discipline is appropriate. See *In the Matter of Tuggle,* 317 Ga. 255, 258 (2) (892 SE2d 761) (2023). Moreover, because this Court has ultimate discretion in attorney-discipline cases, we need not defer to factfinders in such cases to the same degree that we defer to them in other appeals. See id. at 258-259 (2) (citing *In the Matter of Turk,*

11

267 Ga. 30, 31 (1) (471 SE2d 842) (1996); and *Inquiry Concerning Coomer*, 316 Ga. 855, 860 (2) (a) n.5 (892 SE2d 3) (2023)).

The record amply supports the special master's determination that Dalziel violated Rule 1.15 (I) (c) by failing to provide an accounting of the retainer despite W.G.'s requests. We agree with the special master that Dalziel's violation of the rule was mitigated by his lack of disciplinary history and his personal and emotional problems. We also agree that Dalziel's alcohol abuse and behavioral-health issues were not mitigating without a sustained, meaningful period of rehabilitation and that Dalziel's infraction was aggravated by his substantial experience as a lawyer and his refusal to acknowledge his wrongful conduct. Whether Dalziel violated Rule 1.15 (I) (c)'s accounting provision intentionally or through a pattern of neglect, a six-month suspension is proper, particularly given his apparent lack of remorse. Cf. *In the Matter of Coleman*, 278 Ga. 864, 864 (607 SE2d 556) (2005) (accepting attorney's petition for voluntary discipline and six-month suspension where she failed to provide requested accounting). We agree that Dalziel should not be

12

reinstated until a licensed behavioral-health professional certifies that he is fit to practice law.

With regard to the other rule violations, we question whether the evidence supports the conclusions that Dalziel retained or converted unearned fees or that he owed W.G. a refund; that Dalziel gained the bankruptcy information in his professional relationship with W.G.; or that Dalziel's disclosures were wholly irrelevant to his grievance defense.[7] But we need not resolve these issues because it would not change the appropriate discipline in this case.

Accordingly, based on Dalziel's violation of Rule 1.15 (I) (c)'s accounting provision, we order that he be suspended from the practice of law for at least six months, effective from the date this opinion is issued, and that he not be reinstated until a licensed psychologist or psychiatrist certifies that he is mentally competent to practice law. See *Coleman*, 278 Ga. at 864 (accepting attorney's petition for voluntary discipline and six-month suspension where

---

[7] However, we strongly disapprove of the personal insults that riddled Dalziel's responses to the Bar.

13

she failed to provide requested accounting). When Dalziel believes that the conditions for his reinstatement have been met, he shall demonstrate compliance in a petition for reinstatement submitted to the Review Board, which will then issue a report and recommendation to this Court. Dalziel shall not undertake the practice of law until this Court issues an opinion granting his petition for reinstatement. He is reminded of his duties under Bar Rule 4-219 (b). See *In the Matter of Lank*, 300 Ga. 479, 482-483 (796 SE2d 252) (2017).

*Six-month suspension with condition on reinstatement. Warren, P.J., and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ., concur. Peterson, C.J., not participating.*